**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

ODESSA CREDLE-BROWN,          :
        Plaintiff,          :
                       :
v.                        :        3:04-cv-1167 (WWE)
                       :
STATE OF CONNECTICUT DEPARTMENT :
OF CHILDREN AND FAMILIES, DARLENE :
DUNBAR, RENEE HOFF, MARC      :
HAMBRECHT, CHRISTINE KAATZ,    :
HEATHER PANCIERA, WANDA ESTRELLA :
AND LYNN PATON,            :
        Defendants.        :

**MEMORANDUM OF DECISION ON**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This action arises from plaintiff Odessa Credle-Brown's employment at the Connecticut Department of Children and Families. Plaintiff alleges that her treatment violated Titles I and II of the Americans with Disabilities Act ("ADA") and 42 U.S.C. § 1983. Now pending before the Court are defendants' Motion for Summary Judgment (Doc. #116) and plaintiff's Motion to Strike Portions of Defendants' Motion for Summary Judgment (Doc. #123). For the reasons which follow, the motion for summary judgment will be granted in part while the motion to strike will be denied.

The Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

The parties have submitted briefs, a stipulation of facts and supporting exhibits, which reflect the following factual background.

Plaintiff Odessa Credle-Brown was first hired by the State of Connecticut Department of Children and Families ("DCF") as a Clerk Typist in 1994. The position of

Clerk Typist was upgraded to Office Assistant.  Her first supervisor in the Administrative Case Review Unit was Linda Fusco.

On October 18, 2000, plaintiff was diagnosed with post-partum depression, the probable duration of which was twelve to eighteen months.  Plaintiff's doctor recommended plaintiff be placed on a reduced schedule and stated that she would be able to perform her regular work duties on an every-other-day basis for the following ninety days.  Her Medical Certificate and her Employee Fitness for Certification both indicated that plaintiff could work three days per week, but were silent as to light duty.[1]

Despite defendants' contention that plaintiff was on a reduced schedule with regular duties, at various points defendants have stated that plaintiff was on "light duty." For example, in its response to plaintiff's CHRO complaint, DCF stated that plaintiff "was approved for 90-day light duty reduced work schedule" and that plaintiff was expected to perform her regular work duty while she was present at the office.  Further, Lynn Paton and Heather Panciera both referenced plaintiff being on "light duty."

At all relevant times, defendant Marc Hambrect was the Social Work Supervisor of Administrative Case Review at DCF.  He became plaintiff's supervisor in June 2001 and supervised her for three months.  Defendant Renee Hoff was, at all relevant times, a Social Work Supervisor of Administrative Case Review at DCF.  In September 2001, she became supervisor to plaintiff and two other office assistants.

Defendant Wanda Estrella has been DCF's Director of Human Resources since January 1998.  Plaintiff has never met Estrella and is unaware of her position at DCF.

---

[1]     A reduced scheduled implies full job duties on a part-time basis, whereas light duty implies reduced duties on a full-time basis.

Plaintiff further admitted that Estrella had no supervisory control over her nor was she involved in plaintiff's change of duties.  Plaintiff never communicated to Estrella regarding her change of duties.  Plaintiff stated that Estrella was not involved in plaintiff's work, work performance or increasing workload.  Estrella denied having any knowledge that plaintiff claimed to have a disability.

Defendant Lynn Paton started working at DCF in 1998, holding various positions.  When she retired in May 2007, she was a Labor Relations Specialist in the Office of Labor Relations.  Plaintiff does not know who Lynn Paton is or to whom she reports.  Plaintiff not only admitted that she had no communication with Paton, but also that Paton was not involved with plaintiff's job duties, assignments or evaluations.  Plaintiff admits that she never complained to Paton about her job duties.

Defendant Darlene Dunbar is the former Commissioner of DCF.  Plaintiff admits not knowing who Dunbar was.  She also admits that Dunbar did not assign or change her duties, had no direct contract with plaintiff and had nothing to do with plaintiff's evaluations.

Defendant Christine Kaatz[2] was employed by DCF in various positions.  She has, since February 2004, been employed as an Area Director for DCF.  Although Kaatz does not recall having any dealings with plaintiff, plaintiff testified that she spoke to Kaatz regarding her job duties at one point.  In addition, in July 2001, Kaatz was included on several emails regarding a dispute between plaintiff and Amy Howard.

Kaatz testified that she did not have any knowledge of plaintiff having a disability

---

[2]    The parties refer to "Kaatz" as "Kaatz-Steliga."  Because the Court has no information about any change of name, it will refer to her as "Kaatz."

and did not recall being informed that plaintiff had a disability.  She was included on an email in which a coworker stated that she "will also be making contact with [plaintiff's] doctor concerning the behaviors displayed at work."  Kaatz further testified that plaintiff did not submit various documents to human resources and that she did not recall any other communications regarding documents between plaintiff and human resources.

Kaatz never had direct supervisory control over plaintiff.  Plaintiff does not believe that Kaatz gave her direct assignments or changed her job duties.  Plaintiff testified that she did not have daily contact with Kaatz or complain to Kaatz about Renee Hoff.  Plaintiff complained to Kaatz about her change of duties by Hambrecht shortly after the change.

Defendant Heather Panciera is an Assistant Child Advocate with the Office of the Child Advocate in DCF.  Prior to that position, she was Program Supervisor in the Division of Quality Assurance.  Panciera had no supervisory control over plaintiff.  Panciera testified that she did not recall having conversations with Fusco regarding plaintiff's work performance or with Hoff about plaintiff.

In 2001, Hambrecht made the decision, in consultation with other supervisors, to change the duties of the office assistants effective September 3, 2001.  The change was aimed at ensuring that the unit ran more cohesively by allowing the office assistants to learn and perform each other's duties.  No other office assistant besides plaintiff complained to him about their new role or complained of a backlog of work left over not being performed.  Plaintiff did not file a grievance regarding this change of duty because, she claims, she did not know that she could.  She also did not feel right expressing her feelings to Hambrecht regarding the reduced schedule.  Plaintiff did

4

testify that she told Hambrecht that she "couldn't perform all the duties in the time that [she] was there."  Plaintiff complained only to Kaatz regarding the change of her duties, not to any of her direct supervisors.

When she took over as plaintiff's supervisor, Hoff reduced plaintiff's duties because plaintiff indicated that she was overwhelmed by the work.  Other office assistants helped plaintiff with her work.  Plaintiff told Hoff that she had trouble prioritizing her work.  Plaintiff testified that she made this statement because Hoff interrupted plaintiff while she was doing her work.

On October 4, 2001, Hoff emailed Panciera regarding plaintiff's attendance.  In the message, Hoff wrote that plaintiff "left me a voicemail indicating that she forgot to do the daily task sheet I asked her to do yesterday....  The more she works the better our case is.  She is planning on working for about 1 hour."  There is no context provided by either party to explain this correspondence.

Although defendants claim that they did not have knowledge of plaintiff's disability, there is evidence that some of them – Hoff and Panciera – were aware that plaintiff was hospitalized in October 2001 and that she had a doctor who could address plaintiff's behavior at work.[3]

Dr. Tsilia Glinberg, M.D., has been plaintiff's treating psychiatrist since February 2001.  In her affidavit, she stated that plaintiff's postpartum depression affected her ability to concentrate, shortened her attention span and adversely affected her ability to

---

[3]        The Court also notes the existence of Mary Simon, who was named as a defendant in the original complaint but not in the amended complaint.  She was never terminated as a party in this case, however.

follow instructions.  Dr. Glinberg further averred that plaintiff was able to work with medication even if plaintiff reported feeling overwhelmed with the demands of work.  Dr. Glinberg's notes stated that plaintiff contended that she was increasingly stressed by the changing demands of work.  Instead of wanting to extend her medical leave, Dr. Glinberg noted plaintiff's desire to adjust to the new working condition.

Dr. Glinberg stated that the events of August, September and October 2001 exacerbated plaintiff's condition.  On October 10, 2001, a nurse observed that plaintiff was depressed, tearful and suicidal during her scheduled appointment.  Therefore, plaintiff was voluntarily admitted to St. Raphael's Hospital for treatment and observation of her depression.  Plaintiff was discharged on October 31 into Dr. Glinberg's care but was unable to return to work.  As of January 2009, Dr. Glinberg averred that plaintiff was unable to work because of her condition.

## DISCUSSION

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F. 2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential

6

element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Liberty Lobby, 477 U.S. at 24.  The mere of existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him.  See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  See Patterson v. County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper.  See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

Defendants move for summary judgment on all of plaintiff's claims.

I.   **Court's Previous Rulings**

The Court previously granted in part and denied in part defendants' motion for judgment on the pleadings (Doc. #69), reported at 502 F. Supp. 2d 292 (D. Conn. 2007).  The Court upheld its decision upon a motion for reconsideration (Doc. #84), reported at 246 F.R.D. 408 (D. Conn. 2007).

In its previous rulings, the Court found that it had personal jurisdiction over the individual defendants in their individual capacities.  This conclusion was upheld in the ruling on reconsideration.  The Court also dismissed plaintiff's claims against the

7

individual defendants in their individual capacities under Titles I and II of the ADA,

finding that there is no individual liability under the ADA.  This left plaintiff's claims

under the ADA as only against the DCF (only as to Title II) and the individual

defendants in their official capacities.  The Court also held that plaintiff could not

recover monetary damages from the individual defendants in their official capacities

under Title I of the ADA, but only under Title II.  The Court did allow plaintiff's claims for

prospective injunctive relief to survive under Ex parte Young, 209 U.S. 123, 155-56

(1908).

The Court also ruled that plaintiff could assert claims under 42 U.S.C. § 1983

against the individual defendants only in their individual capacities, not in their official

capacities.  Finally, the Court dismissed plaintiff's claim for intentional infliction of

emotional distress.

## II.    Motion to Strike

In addition to filing a response to defendants' motion for summary judgment,

plaintiff also filed a motion to strike several of defendants' arguments.  Rule 12(f) of the

Federal Rules of Civil Procedure provides that, upon motion, a court "may strike from a

pleading an insufficient defense or any redundant, immaterial, impertinent, or

scandalous matter."  In considering a motion to strike, the court does not examine the

merits of the action, but merely determines whether any matter contained in the

pleading itself was improperly included.  Although rule 12(f) specifies a pleading, courts,

including this Court and the undersigned jurist, have allowed parties to strike materials

contained within motions for summary judgment and the attached evidentiary exhibits.

See, e.g., Martel v. Town of S. Windsor, 562 F. Supp. 2d 353, 357 (D. Conn. 2008);

8

Merry Charters, LLC v. Town of Stonington, 342 F. Supp. 2d 69, 76 (D. Conn. 2004) (striking hearsay evidence in exhibit to motion for summary judgment).  Other judges, including other members of this bench, have noted their disapproval of using rule 12(f) to strike evidence, noting that the court may only review admissible evidence pursuant to the language of rule 56.  A motion to strike is therefore redundant insofar as it reinforces what the court should do in the first place – rule only on the basis of admissible evidence.  See Local R. Civ. P. 56(a) ("All material facts ... supported by the evidence will be deemed admitted...."); Ide v. WinWholesale, Inc., 596 F. Supp. 2d 249 (D. Conn. 2009); Ricci v. DeStefano, 2006 U.S. Dist. LEXIS 69305 (D. Conn. Sept. 15, 2006).

While courts have entertained motions to strike evidence included with a motion for summary judgment, plaintiff has not pointed out any decision in which a federal court has struck a legal argument from a motion for summary judgment.  Nor has the Court been able to find such a case.  Accordingly, the Court will deny plaintiff's motion to strike.  The Court will, nonetheless, consider the arguments made by plaintiff within her motion as a response to defendants' motion for summary judgment.  There is no prejudice in this because (1) plaintiff incorporated by reference her arguments in the motion to strike into her opposition to summary judgment and (2) defendants filed a response to plaintiff's motion that addressed the merits of the arguments made therein.

To the extent that plaintiff has also moved for sanctions within her motion to strike, the Court will deny such request.

9

**III.     Whether the Court Has Personal Jurisdiction Over
           the Individual Defendants in their Individual Capacities**

Defendants first argue in their motion for summary judgment that the Court does

not have personal jurisdiction over the individual defendants in their individual

capacities.  Defendants raised this argument in their motion for judgment on the

pleadings and their motion for reconsideration.  Both times, the Court found that it had

jurisdiction.  Defendants cite no new arguments in their summary judgment papers to

warrant a reexamination of the Court's previous ruling.  Therefore, the Court will adhere

to its previous ruling that it has personal jurisdiction over the individual defendants in

their individual capacities.

**IV.     Claims Under the Americans with Disabilities Act**

Plaintiff alleges that she was discriminated against because she had depression

and could only work on a part-time schedule.  Defendants seek summary judgment on

the grounds that plaintiff has failed to establish a claim under the ADA and that Title II

of the ADA does not apply to employment actions.

**A.     Title I of the ADA**

To establish a prima facie case for discrimination under Title I of the ADA,

plaintiff must show that (1) defendants are subject to the ADA; (2) plaintiff was disabled

within the meaning of the ADA; (3) plaintiff was otherwise qualified to perform the

essential functions of her job, with or without reasonable accommodation; and (4)

plaintiff suffered an adverse employment action because of her disability.  Jacques v.

Dimarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004).  If plaintiff presents a prima facie case,

defendants may rebut it by articulating a non-discriminatory business reason for the

10

adverse employment action.  Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468

(2d Cir. 2001).  Plaintiff must then prove by a preponderance of the evidence that the

supposed legitimate reason is actually a pretext for discrimination.  St. Mary's Honor

Center v. Hicks, 509 U.S. 502, 515 (1993).

Plaintiff's claim under Title I of the ADA in the amended complaint is only made

against the individual defendants.  A claim under the ADA cannot be asserted against

an individual, regardless of whether it is made against that individual in her official or

individual capacity.  See, e.g., Menes v. CUNY Univ. of New York, 92 F. Supp. 2d 294,

306 (S.D.N.Y. 2000); Harrison v. Indosuez, 6 F. Supp. 2d 224, 229 (S.D.N.Y. 1998).

The Court will therefore grant summary judgment as to plaintiff's claim under Title I of

the ADA.

### B.    Title II of the ADA

Title II of the ADA provides:

> Subject to the provisions of this title, no qualified individual with
> a disability shall, by reason of such disability, be excluded from
> participation in or be denied the benefits of the services,
> programs, or activities of a public entity, or be subjected to
> discrimination by any such entity.

42 U.S.C. § 12132.  Courts in this circuit have concluded that Title II applies to

employment actions such as this one.  See Coleman v. Town of Old Saybrook, 2004

U.S. Dist. LEXIS 7442 (D. Conn. Apr. 28, 2004); Transp. Workers Union, Local 100 v.

N.Y. City Transit Auth., 342 F. Supp. 2d 160, 170 (S.D.N.Y. 2004).  A claim under Title

II can only go forward if plaintiff can establish that the violation was motivated by either

discriminatory animus or ill will towards plaintiff's disability.  See Garcia v. S.U.N.Y.

Health Sciences Ctr. of Brooklyn, 280 F.3d 98, 112 (2d Cir. 2001).  While intent is

ordinarily a question of fact, there is no evidence here upon which a reasonable jury could conclude that defendants' conduct was motivated by discriminatory animus or ill will.  Summary judgment is therefore appropriate.

## V.   Claims Under 42 U.S.C. § 1983

Count III of plaintiff's complaint alleges that the individual defendants violated plaintiff's rights under 42 U.S.C. § 1983.  The prior ruling narrowed plaintiff's claim so that it is only asserted against the individual defendants in their individual capacities.  Defendants contend that plaintiff has failed to demonstrate any individual involvement in whatever action caused the constitutional deprivation.

Although the Court of Appeals has not addressed the issue, courts in this circuit have held that a claim under 1983 can go forward even where there is a concomitant ADA claim.  See, e.g., Galusha v. New York State Dep't of Envtl. Conservation, 1999 U.S. Dist. LEXIS 11254 (N.D.N.Y July 22, 1999); Campbell v. City Univ. Constr. Fund, 1999 U.S. Dist. LEXIS 9575 (S.D.N.Y. June 24, 1999); but see Holbrook v. City of Alpharetta, Georgia, 112 F.3d 1522, 1530 (11th Cir. 1997) (holding employee may not maintain Section 1983 cause of action for deprivation of rights created by the ADA); see also Keller v. Bd. of Educ., 182 F. Supp. 2d 1148, 1159 (D.N.M. 2001) (citing conflicting authority).  The Court agrees with the other courts of this circuit and will allow plaintiff's 1983 claim to go forward.

To establish a 1983 claim, plaintiff must show that defendants "directly participated in the violation [or that they] failed to remedy the violation after learning of it through a report or appeal," Wimmer v. Suffolk County Police Dep't, 176 F.3d 125, 136 (2d Cir. 1999), or that they exercised "gross negligence in managing subordinates."

Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  Personal involvement is a prerequisite to the assessment of damages, and respondeat superior is an inappropriate theory of liability.  See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).  The Second Circuit Court of Appeals has held that an individual defendant may be held liable pursuant to section 1983 as a supervisor in several circumstances:

> The defendant may have directly participated in the infraction....  A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong....  A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue....  Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event....

Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986).

To the extent that plaintiff contends that each defendant violated her rights under section 1983 by participating in a violation of her rights under the ADA, the Court must first address whether plaintiff can show that her rights under the ADA were violated.

## A.    Discrimination Under the ADA

The first issue is whether plaintiff was disabled under the ADA.  Under the ADA, a "disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."  42 U.S.C. § 12102(2)(A), (C). The Supreme Court has observed that a "disability exists only where an impairment 'substantially limits' a major life activity, not where it 'might,' 'could,' or 'would' be substantially limiting if mitigating measures were not taken."  Sutton v. United Air Lines, 527 U.S. 471, 482 (1999).  The Court further commented that, while an individual should be evaluated in her corrected state, treating the disability does not automatically

mean that the individual is not disabled.  Rather, it is necessary to evaluate the individual in her treated state to determine whether she is disabled under the law.

It is also necessary that the life activity be substantially limited.  The substantial limitation factor requires the court to examine the nature, severity, duration and long term impact of the impairment.  See Ryan, 135 F.3d at 870.  Short term, temporary restrictions are not substantially limiting and do not render a person disabled.  See 29 C.F.R. § 1630.2(j)(2).

Although depression can qualify as a mental impairment under the ADA, "a medical diagnosis of depression is not the sine qua non of having an ADA disability." Menes, 92 F. Supp. 2d at 304; 45 C.F.R. § 84.3(j)(2)(I) ("Physical or mental impairment ... any mental or psychological disorder....").  A mental impairment does not rise to the level of a disability unless plaintiff can establish that such impairment substantially limits a major activity.

The inability to work is a major life.  Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 870 (2d Cir. 1998) (finding that the ability to work is a major life activity); 45 C.F.R. § 84.3(j)(2)(ii).  "[A]n impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one."  Heilweil v. Mount Sinai, 32 F.3d 718, 723 (2d Cir. 1994).  The applicable regulations provide, instead, that "substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  Wernick v. Fed. Reserve Bank of N.Y., 91 F.3d 379, 384 (2d Cir. 1996).

Based on the evidence before the Court, a reasonable jury could conclude that

14

plaintiff was disabled from June 2001, when Dr. Glinberg wrote Hambrect requesting that plaintiff be permitted to work a reduced schedule for ninety days, or July when the request was granted and the Medical Certificate was issued.  Plaintiff was arguably disabled until at least October 2001, when the ninety days lapsed.  In light of plaintiff's inability to work full-time, a reasonable factfinder could conclude that plaintiff's depression substantially limited her ability to perform a major life activity, that is, to work.  Dr. Glinberg further averred that plaintiff would suffer from depression for twelve to eighteen months.  She has also averred that plaintiff is unable to learn new tasks – a deficiency that would undermine plaintiff's ability to work in a broad range of jobs.

A reasonable jury could also conclude that plaintiff was able to perform the essential functions of her job, provided that her responsibilities were scaled down to reflect the part-time nature of her attendance between July and October 2001. Defendants have not argued that this was not reasonable or that part-time duty would have created an undue hardship on the DCF.  See Plourde v. Snow, 2006 U.S. Dist. LEXIS 96040, *28-30 (E.D.N.Y. June 14, 2006).

In order to demonstrate a materially adverse employment action under the ADA, plaintiff must show that she endured a materially adverse change in the terms and conditions of her employment.  Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 238 (2d Cir. 2007).  Not every unpleasant matter short of discharge or demotion creates a cause of action for violation of the ADA.  Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997).  In order to demonstrate a materially adverse change in employment, plaintiff must illustrate an alteration more disruptive than inconvenience or a change in job responsibilities.  Fairbrother v. Morrison, 412 F.3d 39, 56 (2d Cir.

15

2005).  Materially adverse changes must be significant and may include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significant diminishment of material responsibilities, or other indices ... unique to a particular situation."  Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000); see also Curran v. All-Waste Sys., 2000 U.S. App. LEXIS 11025 (2d Cir. May 16, 2000) (applying Title VII and ADEA analysis to ADA case).  Further, the assignment of additional, more difficult responsibilities outside her normal job responsibilities does not create a materially adverse action. See Griffin v. Potter, 356 F.3d 824, 829 (7th Cir. 2004).

Here, the employment action that plaintiff complains of is the reordering of the responsibilities of the office assistants.  Defendants have offered unchallenged evidence that it was done for legitimate business reasons.  Specifically, Hambrecht testified, and plaintiff agreed, that the reorganization of responsibilities was done to allow the office assistants to operate more cohesively.  In addition, to the extent that Hoff changed plaintiff's duties, there is no evidence upon which a reasonable jury could conclude that this change was done as a pretext for discrimination against plaintiff. Because plaintiff has failed to establish that she suffered a materially adverse employment action, she cannot show that any defendant violated her rights under section 1983 by discriminating against in her in violation of the ADA.

**B.    Reasonable Accommodation Under the ADA**

Although defendants do not address it in their motion, and plaintiff merely glosses over it, the Court views the crux of plaintiff's claim under Title I of the ADA as arguing that defendants failed to accommodate her disability.  Specifically, plaintiff

16

alleges in her amended complaint that it was necessary for her responsibilities to be lightened and that defendants, through Hoff, failed to do so.  That failure, plaintiff argues, exacerbated her depression.  While not addressed in her response to defendants' motion for summary judgment, plaintiff's opposition does discuss whether plaintiff's disability was accommodated when she addressed the changes in conditions of employment.

To succeed on a claim for reasonable accommodation, plaintiff must demonstrate that (1) she is a person with a disability under the meaning of the ADA; (2) defendant DCF had notice of her disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.  See Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004); 42 U.S.C. § 12112(b)(5)(A); accord 29 C.F.R. § 1630.9(a).

As the Court stated above, a jury could conclude that plaintiff was disabled between June or July and October 2001.  Based on the correspondence between Dr. Glinberg and Hambrecht and Dean Lindenmuth, combined with the issuance of the Medical Certificate, a jury could find that some, if not all, defendants had notice of plaintiff's disability.

Next, a reasonable jury could conclude that plaintiff could have performed the essential functions of her job with reasonable accommodations.  While plaintiff was arguably disabled and overseen by Hambrecht, from July 2001 until September when Hoff took over supervising plaintiff, plaintiff was successfully performing her duties on a part-time basis.

17

There is evidence before the Court that creates a material fact as to whether plaintiff was reasonably accommodated after Hoff began supervising plaintiff. Specifically, there is an issue of fact as to whether plaintiff was expected to perform the duties of a full-time employee in the three days that she was present. That is, did Hoff expect plaintiff to perform five days worth of work in three days? If so, a reasonable jury could find that there was not reasonable accommodation. For example, Hoff testified that work that accumulated while plaintiff was absent was expected to be completed after she returned. In light of this, plaintiff may be able to establish that the individual defendants failed to reasonably accommodate her disability as required under the ADA. Next, the Court will address the extent to which the individual defendants may be liable under section 1983.

### 1. Wanda Estrella

As to defendant Estrella, plaintiff contends that she knew that plaintiff was disabled, that she was on a part-time schedule and that she testified that DCF did not create part-time positions. These allegations, taken as true, do not support liability against Estrella. They fail to create an issue of fact as to whether Estrella knew of Hoff's failure to accommodate plaintiff's disability or as to Estrella's involvement in the creation of any sort of custom or policy that would have allowed any failure to accommodate to continue. Summary judgment is appropriate as to Estrella.

### 2. Lynn Paton

Plaintiff argues that Paton should be held liable because she was a Labor Relations Specialist who knew that plaintiff was on "light duty." Such allegations are

18

insufficient to create liability on the part of Paton.  There is no evidence before the Court that Paton knew of any violation of plaintiff's rights, contributed to any such violation or allowed any such violation to continue.  The Court will grant summary judgment as to Paton.

### 3.    Darlene Dunbar

Plaintiff's response to defendants' motion regarding defendant Dunbar is "she may well be personally involved in the actions giving rise to the Plaintiff's Complaint." An argument relying on "may well be personally involved" consists of a conclusory statement that is insufficient to survive summary judgment.  See Barlow v. Connecticut, 319 F. Supp. 2d 250, 260 (D. Conn. 2004) ("[G]eneral averments or conclusory allegations of an affidavit do not create specific factual disputes.").  The Court will grant defendants' motion as to defendant Dunbar.

### 4.    Christine Kaatz and Heather Panciera

Regarding defendants Kaatz and Panciera, the evidence supports the conclusion that they were aware of plaintiff's disability and that they knew that plaintiff felt overwhelmed by her workload.  However, there is no evidence in the record upon which a jury could conclude that either Kaatz or Panciera had any power or authority to reduce plaintiff's workload.  Therefore, neither Kaatz nor Pancier could not have failed to remedy any wrong.  Summary judgment will be granted as to both Kaatz and Panciera.

### 5.    Marc Hambrecht

The Court has previously found that Hambrecht's reorganization did not

constitute a materially adverse employment action and that, during his time as supervisor, there was no violation of the ADA.  As such any liability under section 1983 must arise during Hoff's tenure as plaintiff's supervisor.

There is no evidence to support a claim for personal liability against Hambrecht. A reasonable jury could not conclude that he could have affected plaintiff's workload once Hoff replaced him as plaintiff's supervisor.  The Court will grant summary judgment as to the claim against Hambrecht.

### 6.    Renee Hoff

In her role as supervisor, Hoff arguably expected plaintiff to perform five days' worth of work in three days in contravention of Dr. Glinberg's request that plaintiff be given part-time duty.  A reasonably jury could read Dr. Glinberg's request and the Medical Certificate as assuming that the responsibilities during such duty be proportionate with plaintiff's attendance.  Summary judgment will therefore be denied as to defendant Hoff.

Further, qualified immunity is inappropriate as to defendant Hoff.  Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

The test for qualified immunity is twofold and must be considered in sequence. The threshold question is whether, taken in the light most favorable to plaintiff, the facts demonstrate Hoff's violation of plaintiff's rights under the ADA.  The next question is

20

whether that right was clearly established within the specific context of the case.  In

other words, the court must consider whether the constitutional right was clear enough

so that a reasonable official would understand that his actions would violate that right.

Saucier v. Katz, 533 U.S. 194, 201 (2001).  The Supreme Court recently held that

applying the two prong test is no longer mandatory.  Instead, the lower courts "have the

discretion to decide whether that procedure is worthwhile in particular cases."  Pearson

v. Callahan, 129 S. Ct. 808, 818 (2009).

      Thus, a qualified immunity defense is established where "(a) the defendant's

action did not violate clearly established law, or (b) it was objectively reasonable for the

defendant to believe that his action did not violate such law."  Tierney v. Davidson, 133

F.3d 189, 196 (2d Cir. 1998).

      The doctrine of qualified immunity recognizes that "reasonable mistakes can be

made as to the legal constraints on particular police conduct."  Saucier, 533 U.S. at

205.   Qualified immunity applies if the official's mistake as to what the law requires is

reasonable.  Id.  It does not apply if, on an objective basis, it is obvious that no

reasonably competent official would have taken the actions of the alleged violation.

Malley, 475 U.S. at 341.  Summary judgment is appropriate when a trier of fact would

find that reasonable officials could disagree.  Lennon v. Miller, 66 F.3d 416, 421 (2d Cir.

1995).

      If the Court assumes, arguendo, that plaintiff's rights were violated, it becomes

necessary to determine whether a clearly established right was violated by defendants'

conduct.  See Saucier, 533 U.S. at 207-08 ("[W]e will assume a constitutional violation

could have occurred under the facts alleged..., then proceed to the question whether

this general prohibition against excessive force was the source for clearly established law that was contravened in the circumstances this officer faced.").

Here, Hoff should have known that plaintiff had a statutory right to reasonable accommodation and that expecting plaintiff to perform five days of work in three days would violate that right.  Qualified immunity is thus inapplicable.

## VI.   Remaining Issues

For the sake of clarity and for the understanding of counsel both of whom have repeated arguments previously made to and addressed by the Court, the Court will remind the parties that all that remains of plaintiff's claims is her claim against defendant Hoff in her individual capacity pursuant to section 1983.  Defendants may assert a qualified immunity defense at trial should the jury find that there was no violation of plaintiff's rights under the ADA.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment (Doc. #116) as explained above.  As to plaintiff's claim under section 1983 against Hoff in her individual capacity, defendants' motion is DENIED.  The Court DENIES plaintiff's motion to strike certain portions of defendants' motion (Doc. #123).  Plaintiff is instructed to file an amended complaint within 10 days of the filing of this ruling.

Dated at Bridgeport, Connecticut, this 21st day of April, 2009.


_____/s/_____
Warren W. Eginton
Senior United States District Judge